FILED: 5/24/2023 4:47 PM
Vermont Superior Court
Chittenden Unit
23-CV-02171

**USDC - DVT**
**2:23-cv-160**

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| CHITTENDEN UNIT | Docket No. 23-CV-02171 |

HK CENTRAL BLOCK LIMITED )
PARTNERSHIP, )
    Plaintiff )
     )
    v. )    JURY DEMAND
     )
LUBRIZOL CORPORATION; )
LUBRIZOL ADVANCE MATERIALS, INC. )
and JOHNSON CONTROLS, INC. d/b/a )
TYCO FIRE PRODUCTS, )
    Defendants )

## AMENDED COMPLAINT

### Nature of Action

1. People rely on sprinkler systems to protect them from fires that might kill them. The Keen's Crossing Development in Winooski, Vermont, has approximately 213 units of residential housing in the affected buildings. Defendants put the people that live in them at an unacceptable risk of death or harm when they created products that were destined to fail. What is worse is that they knew that the combination of plastic pipe and certain compounds would result in degradation of the pipe. Because the water in sprinkler systems is pressurized, the degradation of the pipe was bound to lead to a spectacular failure.

2. That is precisely what happened at Keen's Crossing. Hundreds of thousands of gallons of water spilled out of the broken sprinkler pipe. Fortunately, there was no fire. Unfortunately, the failure of the sprinkler system caused extensive property damage. The system failed again. Ultimately, Keen's Crossing lost faith in the product and replaced the entire system.



gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

Parties

3. HK Central Block Limited Partnership ("HallKeen") owns the development known as Keen's Crossing. The development contains 213 units of approximately 50% market rate and 50% affordable housing units.

4. Lubrizol Corporation is an Ohio corporation.

5. Lubrizol Advanced Materials, Inc. ("Lubrizol Advanced Materials") is a Delaware corporation. Lubrizol Corporation and Lubrizol Advance Materials are collectively referred to as ("Lubrizol").

6. Johnson Controls, Inc. d/b/a Tyco Fire Products ("Tyco") is a Delaware corporation. Tyco sells Blazemaster pipe under a license from Lubrizol.

Facts

7. Keen's Crossing is in Winooski, Vermont. HallKeen developed Keen's Crossing in connection with the revitalization of downtown Winooski.

8. The Keen's Crossing development consists of five floors of apartments in four different buildings.

9. Chlorinated polyvinyl chloride ("CPVC") pipe is a substitute for traditional piping used in sprinkler systems. CPVC is a polyvinyl chloride ("PVC") homopolymer that has been subjected to a chlorination process. CPVC differs from PVC in that approximately 40% of the binding sites on the backbone are filled with strategically placed chlorine atoms, while the remaining 60% are filled with hydrogen atoms.

10. The Keen's Crossing development installed Blazemaster pipe.

11. Blazemaster pipe is a type of CPVC pipe sold by Lubrizol.



12. Johnson Controls manufactures sprinkler systems using resin created and licensed by Lubrizol, including the one at issue in this case.

13. At the time that HallKeen was installing the sprinkler system, the Defendants already knew that there were several chemicals that were incompatible with CPVC pipe. These chemicals weaken the CPVC pipe.

14. Sprinkler systems accumulate large amounts of water under significant pressure. When sufficient heat exists near a sprinkler system, the system releases the pressurized water in an attempt to put out the blaze.

15. Water does not naturally accumulate in large amounts under pressure inside buildings. In fact, the very nature of buildings is to keep water out.

16. When a pipe weakened by the interaction with other substances is subject to pressure, the pipe can crack. After a crack in the pipe appears, pressurized water can pour out of the piping at a high rate. This interaction is commonly referred to environmental stress cracking ("ESC"). Blazemaster pipe has a history of being subject to ESC.

17. Defendants also knew of the importance of sprinkler systems to the safety of residents in apartment buildings.

18. Defendants were well aware of the history of the product and continued to sell the product. Despite this knowledge, the Defendants let people continue to use their materials to build sprinkler systems.

19. Throughout the period of developing knowledge concerning negative chemical interactions, Defendants continued to downplay any negative interactions involving CPVC pipe.

20. Sprinkler pipe at the Keen's Crossing failed and a huge volume of water spilled out.



A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

21. A sprinkler line cracked causing major water damage to the entire building located at 16 Abenaki Way including housing units, common areas, electrical, elevator, etc. HallKeen relocated all affected units. Some of those units were badly damaged. After the repairs to the units and building systems were completed, another pipe burst in a different building with different units. HallKeen began investigating the history of CPVC and discovered other similar problems with CPVC, in particular in Florida. HallKeen then hired forensic experts to assist to determine the cause of the burst pipes at Keen's Crossing.

22. The experts for HallKeen organized a testing process in Woburn, Massachusetts, that was attended by representatives of the insurance company, the contractor, HallKeen and Tyco. The testing showed that the cracks on the CPVC pipe started on the inside of the pipe. The testing also showed that a sulfur-containing compound was found on the fracture surfaced of the affected pipes. The compound was found on the inside of the pipes, but not on the outside of the pipes.

23. Further testing also showed that the municipal water did not have the sulfur-containing compound. The testing and research by the experts indicated that the damage to the pipes was a result of the conditions that existed when the pipe was installed.

24. HallKeen has suffered damages in excess of $10 Million.

COUNT I
Vermont Consumer Fraud Act

25. Defendants' practices in disseminating information represent unfair practices under Vermont's Consumer Fraud Act.

26. The number of chemicals that have adverse reactions with CPVC pipe has continued to grow. These chemicals are often found in materials used to construct buildings.

gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 4 -

27. With so many adverse reactions to commonplace construction chemicals, Defendants should be the ultimate bearer of any liability for failure.

28. Having information about the lack of compatibility and delaying the provision of this information puts people's lives at risk.

29. Defendants' delaying and restricting the flow of information to protect corporate profits is also an unfair practice under Vermont's Consumer Fraud Act.

30. Defendants' unfair practices were in contravention of Vermont public policy of preserving human life.

31. Both the State of Vermont and the Town of Winooski have express regulations governing the topic of fire safety. Those regulations are designed to protect human life and property.

32. Defendants' practices with respect to Blazemaster pipe offends public policy.

33. Defendants' practices with respect to Blazemaster pipe is immoral, unethical, oppressive and unscrupulous.

34. Defendants' products substantially injure consumers.

35. HallKeen was damaged by Defendants' unfair practices under the Vermont Consumer Fraud Act.

## COUNT II
### Strict Liability – Design Defect

36. Defendants during the relevant time were designers, manufacturers, marketers, distributors, and/or sellers of CPVC pipe. CPVC pipe has an inherent defect because it is vulnerable to both pressure and interactions with certain chemicals.



gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

37. As designers, manufacturers, marketers, distributors, and/or sellers, Defendants owed a duty to all persons whom Defendants' CPVC pipe might foreseeably harm, including HallKeen, not to market any product which is unreasonably dangerous for its intended purpose and foreseeable uses.

38. When Defendants placed their CPVC pipe into the stream of commerce, the pipe was defective, unreasonably dangerous, and not reasonably suited for their intended, foreseeable, and ordinary uses, including for the following reasons:

    a. Disintegration or Deterioration of the pipe;

    b. Sudden release of high-pressure water; and

    c. Increased risk of malfunction during a fire.

39. The chemical composition of CPVC pipe allows it to be degraded by certain chemicals.

40. In addition, CPVC pipe is also subject to degradation in systems with high pressure – like sprinkler systems.

41. The above-described defects exceeded the knowledge of the ordinary person and by the exercise of reasonable care, members of the public would not be able to avoid the harm caused by CPVC pipe.

42. CPVC pipe was sold in the manner intended or reasonably foreseeable by the Defendants or as should have been reasonably foreseen.

43. CPVC pipe reached consumers in a condition substantially unchanged from that in which it left Defendants' control.

44. CPVC pipe failed to perform as safely as an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.



45. As a direct and proximate result of Defendants' acts and omissions, HallKeen has suffered substantial damage. HallKeen has incurred investigation, remediation, cleanup, restoration, monitoring, providing substitute lodging for its residents, full replacement of the CPVC pipe and other costs and expenses related to CPVC pipe.

COUNT III
Strict Liability – Failure to Warn

46. As designers, manufacturers, marketers, distributors, and/or sellers, Defendants owed a duty to issues warnings to the public, public officials, consumers and users of the risks posed by CPVC pipe.

47. Defendants knew that their CPVC pipe would be purchased, transported, stored, handled, used, and disposed of without notice of the hazards that their pipe posed to the public, public officials, consumers and users.

48. At all times relevant to this litigation, Defendants have had actual and/or constructive knowledge of facts, including the following, which rendered CPVC pipe, hazardous to the public, public officials, consumers and users:

    a.    Disintegration or Deterioration of the pipe;

    b.    Sudden release of high-pressure water; and

    c.    Increased risk of malfunction during a fire.

49. The foregoing facts relating to the hazards that CPVC pipe pose to the public, public officials, consumers and users are not the sorts of facts that, the public, public officials, consumers and users could ordinarily discover or protect themselves against absent sufficient warnings.


gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 7 -

50. Defendants breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged here to the public, public officials, consumers and users.

51. Defendants' failure to warn proximately caused reasonably foreseeable injuries to HallKeen. HallKeen and others would have heeded legally adequate warnings and CPVC pipe would not have gained approval in the marketplace for use as fire sprinkler pipe.

52. As a direct and proximate result of Defendants' acts and omissions, HallKeen suffered damages.

53. When Defendants became aware of one negative interaction, they down played the negative interaction.

54. They have also removed information from the internet that was designed to help people understand the interactions.

55. The Defendants have also placed the interaction information behind an information wall that requires people to provide personal information before obtaining potentially lifesaving information.

56. HallKeen has been damaged by Defendant's failure to warn.

## COUNT IV
## Absolute Liability

57. Fire sprinkler systems are an essential improvement to industrial design.

58. Fire sprinkler systems place large reservoirs of pressurized water in a location where it can do an extensive amount of property damage. Purchasers of these systems rely almost entirely on the expertise of Defendants to prevent large amounts of water from coming onto their property.



59.  Defendants are in the best position to prevent the entry of this water onto their property.

60.  Manufacturers of these critical life safety systems must ensure that complete information exists about harmful interactions that degrade the functionality and readiness of such systems.

61.  Manufacturers of these critical life safety systems are in the best position to study and disseminate information about harmful interactions with their products.

62.  Manufacturers are strictly liable for the consequences of unanticipated release of large amounts of water and of failing to distribute this information.

63.  Delaying the provision of information about potential negative interactions puts lives at risk.

64.  Conditioning the provision of information on providing personal information slows down the dissemination of information.

## COUNT V
### Negligent Misrepresentation

65.  Defendants owed a duty to not supply false information concerning their CPVC pipe to those entities installing the CPVC pipe in its buildings.

66.  Defendants were involved in the sale of their product knowing that it would end up in buildings constructed for owners.

67.  Defendants supplied false information concerning the relative safety of their CPVC pipe products for use in sprinkler systems in the hopes that they would not object to use of their CPVC in the construction of their buildings.

68.  Plaintiff justifiably relied on this information.

gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

- 9 -

69. Defendants failed to exercise reasonable care in acquiring the correct information that would have cured their misinformation.

70. As a result of Defendants' negligence, Plaintiff suffered damages.

Claims For Relief

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief:

A. Damages;

B. Attorneys' fees as an element of damages;

C. Attorneys' fees and costs as required by the Consumer Fraud Act;

D. Costs of the litigation;

E. Pre- and Post-Judgment Interest;

F. Punitive and statutory treble damages; and

G. Such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

**Plaintiff demands a jury on all issues so triable.**

Dated:       May 24, 2023

                                                 /s/ Matthew B. Byrne
                                                 Matthew B. Byrne, Esq.
                                                 Brooks A. McArthur, Esq.
                                                 Gravel & Shea PC
                                                 76 St. Paul Street, 7th Floor, P.O. Box 369
                                                 Burlington, VT  05402-0369
                                                 (802) 658-0220
                                                 mbyrne@gravelshea.com
                                                 bmcarthur@gravelshea.com
                                                 Attorneys For Plaintiff



A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369